﻿Citation Nr: 18104740
Decision Date: 05/23/18 Archive Date: 05/22/18

DOCKET NO. 15-09 734
DATE: May 23, 2018
ORDER
Entitlement to service connection for a lower back disorder is denied.
FINDING OF FACT
1. The Veteran does not have a currently diagnosed lower back disorder.
CONCLUSIONS OF LAW
1. The criteria for entitlement to service connection for a lower back disorder have not been satisfied. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303 (2017),
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served honorably in the U.S. Army from April 1953 to April 1955. This case comes to the Board of Veterans’ Appeals (Board) on appeal from a May 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO).
In January 2018 the Veteran presented testimony at a Travel Board hearing before the undersigned Veterans Law Judge (VLJ). A transcript of that proceeding has been associated with the electronic claims folder. 
When a claimant makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled. Clemons v. Shinseki, 23 Vet. App. 1 (2009). In this case, the record shows multiple skin diagnoses and urinary symptoms in service and at present. Thus, the Board has broadly construed the Veteran’s claims of entitlement to service connection for skin cancer and a kidney disorder as reflected on the title page of this document.

Service Connection
The Veteran seeks entitlement to service connection for a lower back injury. Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303(a) (2017). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called “nexus” requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2017). 
The existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C. § 1110 (2012); Degmetich v. Brown, 104 F. 3d 1328, 1332 (1997). In the absence of proof of a current disability, there can be no valid claim. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Pain may be a disability if it reaches the level of functional impairment of earning capacity. Saunders v. Wilkie, 2018 U.S. App. LEXIS 8467 (Fed. Cir. Apr. 3, 2018)
Entitlement to service connection for a low back disorder
At the January 2018 hearing, the Veteran reported he had lower back pain in service from carrying heavy equipment. He reported he sought treatment for his back and right leg in the 1960s or 1970s, although those records were no longer available. He relayed that he was told by a medical professional at the time that he needed to stop working as a heavy-duty mechanic due to his back and sciatic nerve problems. Since then, the Veteran reported he changed what he was doing so that the symptoms were fixed. He did not report any current low back symptoms.
Available VA and private treatment records indicate that the Veteran had no complaints or treatment related to his low back. 

First, no VA examination was provided to the Veteran in connection with his claim, but the Board concludes none is necessary. VA’s duty to assist includes providing a medical examination when is necessary to make a decision on a claim. 38 U.S.C. § 5103A(d) (2012); 38 C.F.R. § 3.159(c)(4) (2017). The RO did not provide the Veteran with an examination. Such development is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006) (noting that the third element establishes a low threshold and requires only that the evidence “indicates” that there “may” be a nexus between the current disability or symptoms and active service, including equivocal or non-specific medical evidence or credible lay evidence of continuity of symptomatology). In this case, the evidence indicates that there are not recurrent symptoms of a disability or a diagnosis of a low back disorder. Thus, no examination is required.
Second, there is no current disability and service connection is thus not warranted. In this case, there is no indication the Veteran has a current back disorder, and at the hearing he testified that his back problems resolved after he stopped working as a heavy-duty mechanic. VA and private treatment records do not show a lower back diagnosis or complaints. Service connection cannot be granted as there is no evidence of a current back disorder, symptoms thereof, or low back pain that reaches the level of functional impairment of earning capacity. Thus, the claim is denied.
REMANDED ISSUES
1. Entitlement to service connection for a left eye disorder, genitourinary disorder, and sinus disorder is remanded.
These issues must be remanded to obtain VA examinations. VA has a duty to assist claimants to obtain evidence needed to substantiate a claim. 38 U.S.C. § 5103A (2012); 38 C.F.R. § 3.159 (2017). VA’s duty to assist includes providing a medical examination when is necessary to make a decision on a claim. 38 U.S.C. § 5103A(d); 38 C.F.R. § 3.159(c)(4). The RO did not provide the Veteran with an examination. Such development is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or recurrent symptoms of disability, (2) establishes that the Veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006) (noting that the third element establishes a low threshold and requires only that the evidence “indicates” that there “may” be a nexus between the current disability or symptoms and active service, including equivocal or non-specific medical evidence or credible lay evidence of continuity of symptomatology). 
Regarding his left eye disorder, at the 2018 Board hearing, the Veteran reported he injured his left eye in service and that he had continuous symptoms since. VA treatment records from January 2015 document a history of trauma to the left eye, symptoms of droopy left eyelid, and a diagnosis of left eye ptosis. The Veteran’s service records are incomplete due to a fire at the National Personnel Records Center, and he has asserted the records related to his left eye are missing. Remand is required for an examination on the etiology of the Veteran’s left eye disorder that considers his lay reports of an in-service injury. 
Regarding his genitourinary disorder, the Veteran’s STRs show he complained of nocturia and frequent urination for 2 months in November 1954 and the assessment was rule out early diabetes mellitus. A December 1964 urinalysis showed no kidney disease. VA treatment records from February 2013 show ongoing complaints of urinary frequency and an assessment of lower urinary tract symptoms. The evidence shows in-service symptoms and current similar symptomatology so an examination is required.
Regarding a sinus disorder, the Veteran’s entrance examination showed no abnormalities related to the sinuses, but the Veteran’s separation examination showed a septal deviation of the left airway. Private treatment records from October 2017 show the Veteran underwent sinus surgery to correct chronic nasal obstruction with deviation to the left side. Based on the separation examination and current medical findings, remand is required for an examination.
2. Entitlement to service connection for bilateral hearing loss and tinnitus is remanded.
Remand is required for these issues to obtain another VA examination. The Veteran underwent a VA examination in March 2012. The examiner provided a negative opinion and relied on the results of in-service whispered voice testing and the absence of documented hearing loss or complaints thereof to form the basis of that opinion. Whispered voice tests cannot be considered as reliable evidence that hearing loss is present. Also, at the January 2018 Board hearing, and after the VA examination the Veteran has testified that he first noticed his hearing loss symptoms right after separation from service, and that he currently experiences ringing in his ears. Remand is required to obtain another VA examination that adequately addresses the Veteran’s lay testimony regarding his hearing loss and tinnitus symptoms and that addresses the unreliability of the in-service whispered voice testing.
3. Entitlement to service connection for a skin disorder, to include skin cancer, to include as due to mustard gas exposure, is remanded.
Remand is required to obtain an adequate VA examination. The Veteran underwent a VA skin examination in April 2012, and the examiner only diagnosed actinic keratosis with scarring on the face and neck, and did not provide an etiology opinion. VA treatment records from October 2012 show that the Veteran had a history of spots on his skin since the early 1960s and ongoing treatment for actinic keratosis. Private treatment records from October 2008 show the Veteran was diagnosed with squamous cell carcinoma of the left helical rim. On remand, the examiner must adequately address all skin disorders and provide an opinion on the etiology of any diagnosed skin disorder.
4. Entitlement to service connection for facial scars, to include as due to a skin disorder.
This issue is inextricably intertwined with the pending issue of entitlement to service connection for a skin disorder and must also be remanded.
Last, on remand efforts must be made to identify and obtain outstanding and relevant VA or private treatment records. 38 C.F.R. § 3.159(c)(1) (2017); Dunn v. West, 11 Vet. App. 462 (1998); Bell v. Derwinski, 2 Vet. App. 611 (1992).

The matters are REMANDED for the following action:
1. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his representative. [Remand Directives and formatting]
2. Contact the Veteran and afford him the opportunity to identify by name, address and dates of treatment or examination any relevant medical records. Subsequently, and after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file. All information obtained must be made part of the file. All attempts to secure this evidence must be documented in the claims file, and if, after making reasonable efforts to obtain named records, they are not able to be secured, provide the required notice and opportunity to respond to the Veteran and his representative.
3. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the etiology of his left eye disorder(s). The entire claims file must be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 
(a.) The examiner is requested to elicit a detailed testimony regarding the Veteran’s in-service left eye injury and resulting symptoms, and the nature of his symptoms since that time. The examiner is reminded that the Veteran’s STRs are partially incomplete, therefore special consideration must be given to the Veteran’s lay testimony regarding the in-service left eye injury.
(b.) The examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that a left eye disorder had onset in, or is otherwise related to, active service. The examiner must specifically address the Veteran’s testimony and VA treatment records showing longstanding ptosis of the left eye with remote injury.
4. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the etiology of any genitourinary disorder. The entire claims file must be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 
(a.) The examiner is requested to elicit a complete testimony from the Veteran regarding his in-service genitourinary symptoms.
(b.) The examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that a genitourinary disorder had its onset in, or is otherwise related to, active service. The examiner must specifically address 1) the November and December 1954 STRs showing complaints of frequent urination with a normal urinalysis; 2) VA records showing continued urinary complaints and an assessment of lower urinary tract symptoms; and 3) the Veteran’s contention that his genitourinary disorder is due to drinking unclean water in service.
5. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the etiology of any sinus disorder. The entire claims file must be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 
(a.) Elicit testimony from the Veteran regarding the onset of his sinus problems, to include whether there was an in-service injury that resulted in a deviated left airway.
(b.) The examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that a sinus disorder had onset in, or is otherwise related to, active service. The examiner must specifically address the following: 1) the septal deviation noted upon separation; 2) the October 2017 private records documenting a history of chronic nasal obstruction treated with corrective surgery; and 3) the Veteran’s testimony that his sinus disorder is related to chemical exposure from cleaning materials and asbestos. 
6. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the etiology of his bilateral hearing loss and tinnitus. The entire claims file must be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 
(a.) The examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that the bilateral hearing loss and tinnitus had onset in, or is otherwise related to, active service, or had its onset within one year of separation from service. The examiner must specifically address the following: 1) the Veteran’s lay testimony that he first noticed hearing loss symptoms shortly after service that gradually worsened; and 2) the Veteran’s hearing testimony that he experiences symptoms of ringing in his ears.
The examiner is also requested to address the unreliability of the in-service whispered voice testing, and the examiner is reminded that the Veteran’s STRs are incomplete so particular attention should be paid to the lay testimony regarding noise exposure in service and any in-service hearing symptoms.
7. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the etiology of any skin disorder or facial scars. The entire claims file must be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 
(a.) The examiner is requested to clarify all currently diagnosed skin disorders.
(b.) The examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that each diagnosed skin disorder had onset in, or is otherwise related to, active service. The examiner must specifically address the following: 1) October 2008 private treatment records showing a diagnosis of squamous cell carcinoma of the left helical rim; 2) October 2012 VA treatment records show a history of skin rash since the 1960s and a current diagnosis of actinic keratosis; and 3) the Veteran’s assertion that his skin cancer is etiologically related to in-service sun exposure.
8. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claims, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2017). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.
9. Ensure compliance with the directives of this remand. If a report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998).
 
K. MILLIKAN
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD C. Smith, Associate Counsel